The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. I want to welcome the attorneys in our third case this morning, number 19-6626, Ward v. United States. Captain Mazza? Yes, Judge. Judge, you are representing the appellate, are you? Yes, that's correct, Your Honor. And are you an Air Force officer? Is that the captain's title? I'm an active-duty Navy officer at this point, Judge. Active-duty Navy. Well, then what's that? Captain of the Navy. You're 06. That's right, Judge. Very good. Good to have you here. And we look forward to your presentation. You may proceed. Thank you, Your Honor. And may it please the Court, Brian Mizer on behalf of Joseph Ward, III. Through the Uniform Code of Military Justice, Congress authorized Captain Ward to be tried by a panel of eight military officers and to be convicted with the concurrence of two-thirds of those officers. But at the time of Captain Ward's court-martial and direct appeal, neither Congress nor any military appellate court had authorized those eight officers to employ a preponderance of the evidence standard during their deliberations or to use one charged offense to prove another charged offense. The Court of Appeals for the Armed Forces, or CAF, has concluded that it was an obvious violation of basic due process for them to do so, and Captain Ward received the ineffective assistance of counsel on direct appeal when his military appellate lawyers failed to raise that preserved issue. What isn't in dispute, and there's a lot in dispute regarding Burns v. Wilson, but what isn't in dispute is that Captain Ward is entitled to de novo review, where the military courts have manifestly refused to review the evidence. I'm not sure what the reason is for that. Well, this is a collateral proceeding. It's called quorum nobis, but it's really like a habeas corpus proceeding, or it is a habeas corpus proceeding on page 41. And don't we give deference to the military proceedings like we would in a civilian court? We give deference as I suggested, while the meaning of what full and fair consideration is under Burns isn't entirely clear, Burns does make clear that if the military courts refuse to hear the matter, that Captain Ward is entitled to de novo review. And we believe that that's what happened here with the quorum nobis petition that we submitted to the Air Force Court, and then ultimately to the Court of Appeals for the Armed Forces. Because on the same day that the CAF denied Captain Ward's petition for quorum nobis in a case called United States versus Gray, the court held that Article 76, which is the UCMJ's finality bar, was a jurisdictional bar to petitions for quorum nobis in the military courts. And the other thing that the court does that day, they deny the quorum nobis petition in Gray. They also deny Captain Ward's quorum nobis petition and the quorum nobis petitions of two other airmen, Lewis and Jeter. And so where the military courts have divested themselves of jurisdiction, we believe that this court then proceeds, and indeed Burns says that this court proceeds with de novo review. Captain, let me ask you this. The petition was fully briefed before two separate appellate courts was denied the claim. Is it your contention that doesn't meet the full and fair consideration test? Well, Your Honor, I think our primary argument is that when the when the court, when the CAF is saying that Article 76 bars quorum nobis, that that isn't full and fair consideration under any standard. But if the court moves past Burns and seeks to wade into what is quite accurately a believe that Captain Ward can prevail under that standard as well. And we believe that the most accurate statement of what full and fair consideration is, is set forth in the D.C. Circuit's Sanford decision, which is a 2006 decision. Because remember that Burns is the last word from the Supreme Court on habeas 2241 petitions. But Councilman is the last word from the Supreme Court two decades later in collateral attack petitions under 1331. And while the courts coffin has said that full and fair consideration has made has meant many things to many courts, the 10th Circuit's jurisprudence is in fact all over the map with respect to interpreting that phrase. But again, we think that Councilman provides some illumination of what is reviewable on collateral attack in addition to Burns. On page 747 of Councilman, Your Honor, you will see that the court says that Article three courts have jurisdiction to review courts martial that are void due to lack of jurisdiction. And then importantly, or some other fundamental defect. And we believe that the violation of the presumption of innocence is clearly within the that other fundamental defect. Additionally, additionally, on page 753 of Councilman, the court suggests that habeas review is broader than that discussed in in Councilman, where the court says, quote, grounds of impeachment cognizable in habeas proceedings may not be sufficient to warrant other forms of collateral relief. And then ultimately, on that same page, the question of whether a court martial judgment may be deemed void may turn on the nature of the alleged defect and the gravity of the harm from which relief is sought. We're dealing with very serious constitutional issues here. As I mentioned, the presumption of innocence and then the Sixth Amendment claim relating to Captain. But even if there's a there's a some kind of a violation here, it's all subject to constitutional harmless error review with respect to the Hills violation, if that answers your honor's question. So it would be harmless beyond a reasonable doubt is the standard that the cap is applied when interpreting these prejudice under under these cases. And so again, we believe that Sanford provides a 2006 case from the D.C. Circuit provides that the court probably the most current and accurate synthesis of both Burns and and Councilman. With regard to the merits, your honor, underpinning the government's defense of both the due process argument and the Sixth Amendment claim is the government's assertion that this destruction that was given at Captain Ward's court-martial was entrenched by a litany of cases at the time of his court-martial. But as the government argued before the Air Force Court of Criminal Appeals, there was no settled law at the time of Captain Ward's direct appeal, and there was no reason why this issue wasn't raised. And that's the joint appendix at 116. In fact, dozens of other military attorneys were raising it at the time from every branch of military service. And we provided last week a 28-J letter dealing with the only circuit opinion, I believe, to have addressed Hills' error, even if obliquely, in Evans v. Horton, which is 792 Federal Appendix at 571. And there, the petitioner was arguing that raising the error at the time would have been frivolous. And the Tenth Circuit concludes, on the contrary, as the government points out, litigants in other cases taking place around the same time as Evans' 2014 trial and 2015 appeal raised this very argument. And so it was deficient performance for Captain Ward's attorneys not to do the same thing that attorneys from the same office were doing at the same time. And we believe that Captain Ward falls in the ambit of cases where there is prejudice from that deficient performance. But they had it in a recommended instructions book. That's correct, Your Honor. So an Army pamphlet... You're obviously wrong. How did it end up in a recommended instructions book? Well, Your Honor, that's a great question. I don't know that we're going to be able to get to the question of how the Army JAG school put it in its pattern instruction, what's called the military judge's bench book. But as I said, there's no military case that said that you could use a preponderance of the evidence standard or one offense to prove another offense. And with respect to the obviously wrong, beyond a reasonable doubt, has been the state... Well, the rules of the federal rules has a provision of what they call 404B, I think it is. That's pretty much a lay on to that, isn't it? It is, Judge. And we in the military have the almost identical rules of evidence, with the exception of privileges, which are codified unlike the federal rules of evidence. And so it had this evidence come in under 404B, that would have been a permissible use. But this came under military rule of evidence 413, which also has a federal counterpart. And the CAF has held that it violates the presumption of innocence in the manner that it was used in this case. And beyond a reasonable doubt is the standard in courts martial and has been since the Uniform Code of Military Justice was adopted May 1st, 1950. And so however it came to be in the bench book, Judge, it conflicted with statute and not a recent statute, a decades old statute. And so the rule there was bolstered not only by the statute, but also the Court of Appeals for the Armed Forces earlier decision in Wright, which six times... It didn't conflict, I don't think, with the 404B jurisprudence of this circuit. I mean, we've proved those 404B admissibility issues pretty routinely, I think. Yes, Your Honor. And were this a case involving 404B and had they set the foundation for one of the exceptions for 404B, we would only be dealing with one due process violation here. Remember, the CAF on page 357 says that there are two problems. One is this preponderance of the evidence that's going to the jury, and the second is using uncharged conduct to prove other uncharged conduct. And we'll concede that 404B allows that both in the military and in Article III courts, but that is not the issue or the rule that was invoked here. It was 413. I understand. Go ahead. Captain, how about comment on the retroactivity issue as to final convictions on a collateral challenge? And so we think that there are two distinct constitutional violations here, Judge. One is the Sixth Amendment violation on direct appeal, where at the very least, Captain Ward would be entitled to have his direct appeal voided and directed back to the Air Force Court of Criminal Appeals. But to your question, retroactivity under Teague, you don't go through the analysis unless something announces a new rule for purposes of Teague. And as I've alluded to earlier, there's nothing new about Hills' decision, and nothing in Hills suggests that it was anything than a reaffirmation of the CAF 2000 decision in Wright. If you look at the Wright decision, you will see six references to the word uncharged. And indeed, the CAF in Wright, again, in 2000, is looking to the legislative history for federal rule of evidence 413, and that the uncharged misconduct, not charged offenses in the same case. And so when Hills takes a look at this in 2016, and says that it's obviously a constitutional or, to be very precise, obvious error, they reaffirm Wright and tell military litigants that we never said that this could be uncharged. And with respect to the other aspect of the due process violation, beyond a reasonable doubt, as I said, is in Article 51 Charlie, and has been since May 1st of 1950. And in fact, with respect to Army practice, beyond a reasonable doubt, has been the standard even longer than that, not in Navy practice, but in Army practice. And so we believe that didn't announce a new rule. It would have been obvious to all jurists, notwithstanding the fact that it makes it into a pattern instruction that is signed off by an Army 06 at the Army JAG school in Charlottesville. With respect to, I think the final point that I want to make with respect to the military courts having closed their doors to collateral relief, we not only have Gray, but we also have the Willingbring case, which if that sounds familiar, it's the same Sergeant Willingbring that has been before this circuit. And one of the issues not addressed by this court in the collateral review of his case was CAF 1998 holding that death was still authorized punishment for the crime of rape for purposes of the statute of limitations. CAF overruled that decision in a case called Mangahas in 2018. And so Willingbring then went back to the CAF, seeking to have the CAF enforce the fact that it had overruled the decision and the precedent in his case. And the order at 78 MJ 347 is directing Sergeant Willingbring, because of finality under article 71 and 76, that he should raise his collateral relief in an appropriate forum. And so Willingbring, if he seeks to have the benefit of CAF's precedent in his case, has to go to an article three court under CAF's current view of its limited jurisdiction. Ultimately, your honor, there's nothing that this court can do to compel the CAF to acknowledge its jurisdiction to review collateral attacks of court-martial involving fundamental constitutional error, but it can prevent a miscarriage of justice by voiding Captain Ward's court-martial and authorizing a rehearing in accordance with statute and the basic constitutional guarantees. Thank you, your honor. Thank you, Captain Miser. Uh, Mr. Mess, Messner, you're representing the government, correct? That is correct, your honor. Good to have you here, sir. Thank you, your honor. May it please the court, Matthew Messner, on behalf of the respondents of the United States of America. A review of the merits by two appellate military courts, a disposition that relies on finding authorities that address the identical issues presented by petitioner, and two sets of thorough briefings. These are the hallmarks of the treatment that petitioner's challenge received in the military courts. This satisfies the Supreme Court standard that article three courts examine whether the military courts gave full and fair consideration to petitioner's challenges. In light of this, the petitioner may not relitigate such challenges with de novo review in the article three habeas court. The district court's judgment should therefore be affirmed for three reasons. First, the district court correctly determined that petitioner was not entitled to habeas relief because his petition for the writ of Corvin Novus received full and fair consideration by the military court. Second, yet if the court were to reach of the merits of the issue fully and fairly considered by the military court, petitioner is not entitled to a retroactive application of the rule announced in Hills. Third, petitioner has not shown that his appellate counsel fell below an objective standard of reasonableness by failing to challenge an issue which, in the words of the highest military court, was a common understanding of the law. Turning to the first point, Your Honors, the Supreme Court has recognized that military law is separate from civil law because several courts have played no development in the creation of military law and have never engaged in a military court to enforce military law. And as announced by the Supreme Court in Burns, the court stressed that it is not open to a federal civil court to grant the writ of habeas simply to reevaluate the evidence. Indeed, the Supreme Court recognized that in military habeas corpus, the inquiry, the scope of the matters open for review has always been more narrow than in habeas. It is for that reason, as this court recognized in Willowbring, that the review of federal habeas courts of court-martial decisions is limited to a determination of whether the military tribunal gave full and fair consideration to the issues presented. Or, stated differently, as my colleague has indicated, the inquiry is whether the military courts manifestly refuse to give considerations to the points raised. Did the military court allow them to throw out this thing with one sentence order? Your Honor, the criminal court of appeals did generate a summarily dismissive matter by saying that the writ was denied. But in doing so, it also cited two key authorities, the United States v. Chapman and the United States v. Lewis. And upon close inspection of those authorities, Your Honor, the respondents respectfully submit that those authorities were honest and addressed the issues, which shows that the jurists reviewing the petition understood the issues, recognized the authorities that controlled them, and rested on those authorities to rule on the matter. First, an examination of Chapman underscores that the there's no reason why the challenge could not have been brought sooner, which, upon close inspection of my colleague's argument, there is something to be said there. If it's truly the case that Hills did not announce a new rule and was really born out of precedent that was preexisting at the time, this was an issue that could have been raised on direct review. So to take that issue and then present it in the petition for writ of quorum novis is not appropriate. And then second, looking at Lewis, yes, part of that holding is explaining why quorum novis is not available in the military courts, but there's also an alternative holding that directly addresses the issue that Petitioner raised here, which is whether or not Hills is to apply retroactively. And the Lewis court held that it does not. And importantly, Lewis was a binding petition on the Criminal Court of Appeals, and it was decided one day before Petitioner Ward's petition for writ of quorum novis was denied. So the Criminal Court of Appeals had a one-day-old binding authority that controlled the results. So relying on that by reference, the analysis laid there in the Lewis opinion into its order here, and that is why it ultimately denied relief in one sentence. So while it is, admittedly, a short opinion, it nonetheless understood, it being the Criminal Court of Appeals, understood the issues presented and gave them full and fair consideration. It was just that. If they had written down everything that you just said, they'd have had a pretty good opinion. You explained it pretty well for them. I think it's just a matter of efficiency. Otherwise, in effect, the jurists would be copying and pasting everything anew. And I think this court is well familiar that summary dispositions can be an efficient and effective tool to address matters when they're controlled by binding precedent. And so for that reason, the respondent respectfully submits that Petitioner's challenge was given full and fair consideration. And as the court recognized in Willenbring, this inquiry is much more narrow. Now, to be sure, the inquiry can be broader on jurisdictional questions. So that's jurisdiction in a different sense. As the to exercise the court's martial outright, addressing issues such as whether or not the service member is actually an active member at the time. It also assesses whether the military tribunal had personal jurisdiction over the defendant at the time. So looking at councilmen, the fundamental errors that are void, ones that are to be given the greater review, are those that would void the judgment for race judicata purposes. That is the subject matter jurisdiction of the tribunal itself, as well as personal jurisdiction over the defendant. That is where the Article III habeas courts review is plenary. And where it does diminish is on all other matters, where the inquiry is just whether it's full and fair consideration. And if the court is satisfied that full and fair consideration is to be given, the inquiry then ceases. And I think that is what Burns held in that plurality opinion. And the constitutional deficiencies raised in Burns are just as serious as the alleged ones here. It should be noted that in Burns, the petitioners were convicted of rape and murder and sentenced to death. And they had alleged that as a result of the result of the pleadings, they were denied the basic rights to the Constitution. They had evidence. They alleged that evidence was planted. They alleged that the government coerced witnesses to testify against them, and that they were questioned without knowing their rights. So while Burns was decided before Miranda, I think that argument as described by the court of opinion, it echoes in Miranda-type sentiments. So let me ask you this. Should we treat the Burns test as a jurisdictional threshold, or that it just only affects the scope of review? Your Honor, I would review Burns as being a question about the scope. I think the District Court is obligated under 2241 and 1331 to announce that it has subject matter jurisdiction to entertain the writ. Moving past that, the next step would be through Burns is, okay, the writ is before me. What scope of review am I to apply? If the jurist assessing the writ as well as what was considered in the military court's concern was given full and fair consideration, I think that ends the inquiry. And at that point, I think it's a dismissal on the merits and not even a dismissal for failure to state a claim. So I would not say that when the court concludes its review and says that they're fully in fair consideration that a jurisdictional dismissal through the vehicle of 12b1 would necessarily be the correct disposition. But a dismissal because it fails on the merits would nevertheless be appropriate. And I do hope that that has answered Your Honor's question. Your Honor, I'd like to turn now to the second point here regarding the retroactivity. I think as my colleague pointed out... Before you get to that, let me ask you this. Why are you not also arguing that even if he got past all the other things, they couldn't prove harmfulness anyway? Well, if we give the equivalent deference that we were given in that appeal, we've got to look to the state court proceedings and give them quite a bit of deference. Can we give that same equivalent deference to the military court? Well, Your Honor, I think that's a good point. I think that's a good point. This is a question that was addressed in the Third Circuit's opinion, Armand. And I think the Third Circuit, in reading the relations between the military habeas review and state habeas review, concluded that they are not commensurate in scope. That is, the military review is narrower than state habeas. So I don't think Your Honor has the opportunity to say, even if we found that this wasn't fully and fairly consideration, that it amounts to harmless error, because I think that would go outside the bounds of review authorized by Byrne. And the Third Circuit's opinion that I referenced, it's 549 F3rd 279. And Your Honor, to the retroactivity question, I think my colleague and I are in agreement that the question is, that critique controls, but the question is, after that point, where do we go from there? My colleague asserts that Hills is not a new rule, whereas the respondent asserts that it does. I would respectfully note that Hills was a new rule. The court announced that the case was a matter of first impression, and that it was understood, interpreting military rule of evidence 413, that propensity evidence could be used by charged conduct and uncharged conduct to show that the defendant had a propensity to commit sexual assault. But at Hills, when Hills was testified, it said, in reviewing this interpretation of the military rule of evidence, it held that the interpretation of using this propensity instruction for charged conduct did violate the presumption of innocence guaranteed by the Sixth Amendment. And I would just like to clarify the nature of this challenge here, especially in review of the military judge's charge on Joint Appendix 196 and 197. This is about the use of evidence of charged conduct to facilitate a propensity instruction. At all times, as evidenced by the military judge's charge, the panel, or the jury, was charged with assessing whether or not the government satisfied its burden that the offense was committed beyond a reasonable doubt. The jury was not excused of this obligation to say, as I understood my colleague to argue, was not excused of the obligation to find the defendant guilty based on a mere preponderance of the evidence. Indeed, the last sentence of page 196 into 197, I think, underscores the military judge's instruction to the panel to be clear that at all times, that the standard of beyond a reasonable doubt must be met. And so, with that being the understanding of the error, and in light of Hills holding a new rule that the interpretation of the military rule of evidence was unconstitutional, the inquiry becomes whether or not this announced a watershed procedural rule such that it should apply retroactively. And the government would just note, Your Honor, that since the court announced the retroactive activity analysis in Teague, that the Supreme Court has never invoked this exception to apply any rule retroactively. And so, this should not be the first case that does so here. And the government would respectfully analogize that the circumstances presented in this case is similar to the ones that the Supreme Court announced in Wharton, which addressed whether or not the court's decision in Crawford should apply retroactively going forward. And if Your Honor recall, Crawford held that testimonial hearsay, but admitting that against defendants violated the confrontation clause. And so, the analogy here is that Crawford, is that the military rule of evidence allowed dependency evidence to come in for charge of conduct. Crawford, the rule prior to Crawford, said that that testimonial hearsay could come in against a defendant. But since those rules changed, that type of evidence was no longer permitted. And in Wharton, recognizing that, while Crawford rested on the guarantees of the Sixth Amendment regarding the confrontation clause, that it nonetheless was not to apply retroactively. And we would submit that this case presents as a similar circumstance here, and that Hill should not be applying retroactively for the reasons also explained in the criminal court of appeals decision in Lewis that was cited when denying petitioner's petition. Your Honor, I would just like to briefly note, in response to the Rule 28J letter that we submitted, that there were challenges regarding jury instructions going on at this time, and reflect that it was understood that it was an error worth preserving, but it was ultimately a matter of judgment whether or not it should carry forward. As those challenges were being raised, it bears noting that they were all unsuccessful. And so, in the wake of all these unsuccessful challenges, the government would submit it would be reasonable for petitioner's direct review appellate counsel to have the opportunity to forego that challenge in favor of others that she or he might deem might be more successful. And so, given the strategic choice in judgment, the respondent respectfully submits that petitioner's direct appeal counsel was not ineffective. And Your Honor, if you have no further questions, the respondent respectfully asks that you affirm the district court's judgment in all respects. Thank you, Your Honor. I'm sorry, Judge. I say you have some rebuttal time, Captain Miser. Thank you, Judge. With respect to the scope of review, because I think that that is very important, obviously, for this court's resolution of the two constitutional issues before the court, we believe that the D.C. Circuit in Sanford provides a roadmap, if you will, of how this court should address it. And you can find that at 586 F. 32. And the circuit employs a two-part test. First, a review of the military court's thoroughness in examining the relevant claims, at least where thoroughness is contested, and it is contested here. And then, two, a close look at the merits of the claim, albeit with some degree of deference and certainly more than Kaufman's de novo standard. Here, you have a summary order from the Air Force Court of Criminal Appeals. And with respect to my court's opinion in Lewis, which did address those issues, but the CTAs, the Courts of Criminal Appeals, which are composed of three military appellate judges, are really the least important aspect of the military appellate system. And you see that reference in Noye B. Bond and Councilman. The design of Congress really placed a lot of emphasis on the civilian judges at the Courts of Criminal Appeals for the Armed Forces. And that's why we have really focused on the fact that that court has disavowed the jurisdiction of military appellate courts, and the CCAs are subordinate to that court, to deal with quorum novus and habeas corpus petitions post-finality under Article 76. Now, Judge, my friend has raised Armand v. McKeon, which held that was not implicated by AEDPA when that statute was passed. And so full and fair consideration remains the standard, and more accurately, as the D.C. Circuit has held, full and fair consideration as illuminated by Councilman. And we know that there are fundamental errors that will be reviewed, according to Burns, in Article III courts, or that American servicemen and women have Article III courts available to them. I think we fundamentally disagree on the holding of calf and its progeny with respect to the presumption of innocence. That is the holding of the calf. We invite the court's attention to page 357 of Hills. We have also cited the Tovo Charez case in our pleadings, and also the Williams case, which is 77 M.J. 460, where the calf says, although our decision was not ambiguous, this is the third case in which we have had to correct a court of criminal appeals judgment on this issue. And what is at issue is the foundational tenet in the language of Tovo Charez. At issue here is appellant's right to be presumed innocent until proven guilty, a foundational tenet of the Fifth Amendment's due process clause, and a substantial right infringed upon by the erroneous instruction. As the calf held in Hills, juxtaposing beyond a reasonable doubt with a preponderance of the evidence standard would tax the brain of even a trained lawyer. And in a system that already denies servicemen of rights, I mean, as we sit here today, American men and women in uniform are the only Americans that can be convicted by a non-unanimous vote. And all Hills says is that you can't stir in preponderance of the evidence into those deliberations as well. We believe that that issue hasn't been addressed by the military courts. But even if this court were to hold otherwise, that the military courts haven't manifestly refused to consider those claims with these two truncated orders in Captain Ward's case, we believe that these are the fundamental errors that under Sanford, and it's not just the D.C. Circuit, the Ninth Circuit would even go further and have a de novo review. And I would also point out here that the Tenth Circuit, although invoked by the government, has not been entirely consistent either. With its most recent decisions in Rogers and Lifts v. Commendant, the court's adopting a four-factor test to assess full and fair consideration. Captain, let me ask you this. Can this court look behind a summary dismissal to make a summons about the military military courts reasoning and denying the petition? Your Honor, I think that's that's the problem is is when you have the court in gray, say that Article 76 no longer gives the court jurisdiction for quorum novus, and they deny Captain Ward's quorum novus petition that same day. There's respectfully nothing to look behind. The courts have closed their doors to Captain Ward, and which is why he went to Article III court. But if you want to look further, if you want to look behind, as you say, Sanford gives that ability, that two-factor test. You examine the thoroughness of the military court's disposition, and you see that here, which is a one-sentence order, particularly from the Court of Appeals for the Armed Forces, and then you get to the merits of the claim, affording some deference, not as much deference in in AEDPA, even under the Third Circuit standard. But but once you do that under the both Sixth Amendment and the Fifth Amendment claim, Captain Ward is entitled to relief. And I think the final point that that I would make is that the courts, neither the Air Force court nor the CAF, addressed the Sixth Amendment claim that that Captain Ward was denied was denied his Sixth Amendment right to the effective assistance of counsel on direct appeal. At most, there is partial review of the Teague claim. And if there are no further questions, Your Honor, I appreciate the court's time. Thank you, Captain. We appreciate it. We'll take the case under advisement and close out this call and move on to the next case, Madam Clerk. Yes, sir. The court will take a brief break before hearing the next case.
judges: Robert B. King, Henry F. Floyd, Thomas S. Kleeh